United States District Court
Southern District of Texas
**ENTERED**
November 22, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN R. GIESE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-2626 |
| | § | |
| TETRA TECHNOLOGIES, INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff/third-party defendant John R. Giese ("Giese") and third-party defendant Richard Vanek's (collectively, the "Sellers") motion for summary judgment (Dkt. 17), and defendant TETRA Technologies, Inc.'s ("TETRA") motion for leave to file a first amended answer (Dkt. 24). After reviewing the motions, responses, replies, and applicable law, the court is of the opinion that the motion for leave to amend should be DENIED, and the motion for summary judgment should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

### A. The Equity Interest Purchase Agreement

This case involves claims for indemnification and breach of contract arising out of TETRA's acquisition of JRGO Energy Services, Inc. ("JRGO"). *See* Dkts. 1, 8. In 2018, TETRA acquired JRGO from the Sellers, and together they executed the Equity Interest Purchase Agreement ("EIPA"). *See* Dkt. 17, Ex. 1. Article III of the EIPA contains various representations and warranties. *See id.* Relevant to this case, the Sellers affirmed that they:

- Disclosed all leases with payments of more than $5,000 per year (*Id.* § 3.11);

- Held valid title or leasehold interest in listed assets and had kept those assets in good repair (*Id.* § 3.19);

- Disclosed all required liabilities (*Id.* § 3.7); and

- Maintained a system of internal control over financial reporting (*Id.* § 3.6).

Article VIII of the EIPA contains an indemnification provision where the Sellers agreed to indemnify TETRA for any breach of the EIPA. *Id.* § 8.2(a)(v). That provision requires TETRA to notify the Sellers within 30 days of a claim or demand subject to payment under the indemnification provision. *Id.* § 8.4(a). Failure to provide timely notice relieves the Sellers of their obligation to indemnify TETRA to the extent that failure materially prejudiced them. *Id.* Additionally, the parties executed an escrow agreement alongside the EIPA. Dkt. 17, Ex. 2. If TETRA did not make an indemnification claim, the escrow agent was required to release funds to the Sellers according to a specified schedule with the final payment set for June 6, 2020. *Id.*

## B. The Dispute

Until December 2017, JRGO rented lay flat hose from Maskell Pipe & Supply, Inc. ("Maskell"). Dkt. 17, Ex. 4 ¶ 7. This rental was governed by a month-to-month, oral agreement where JRGO tracked the use of the hose on a spreadsheet and issued monthly purchase orders to Maskell. Dkt. 17, Ex. 3 at 89–90. Maskell did not own the lay flat hose but leased it from Sowards Oil Field Services, Inc. ("Sowards"). *See* Dkt. 19, Ex. A. JRGO's primary point of contact with Maskell was David Arthurs ("Arthurs"). Dkt. 17, Ex. 4 ¶ 7. In November 2017, Arthurs informed JRGO that Maskell would no longer rent the hose to JRGO but offered an introduction with Sowards so JRGO could directly rent the hose. *Id.* ¶ 12. Giese and JRGO's General Manager, Joseph Powell ("Powell"), met with Sowards' owner Billy Joe Wynkoop ("Wynkoop") on

2

December 13, 2017. *Id.* ¶¶ 3, 13. At that meeting, Giese and Wynkoop negotiated a deal whereby Sowards would continue to rent out the lay flat hose Maskell had previously rented to JRGO. *Id.* ¶ 14. This was also a month-to-month, oral agreement with the same tracking and purchase order mechanism that JRGO and Maskell previously used. Dkt. 17, Exs. 3 at 89–90, 4 ¶ 16.

In December 2017 or early 2018, Arthurs visited JRGO "to have some loose ends tied up" and have Powell sign written contracts for the lay flat hose rental. Dkt. 17, Ex. 19 at 13–16. JRGO's standard operating procedure dictated that only Giese would sign written contracts. Dkt. 17, Ex. 3 at 114. Powell asked another JRGO employee, Christopher Esenwein ("Esenwein"), to meet with Arthurs in his place because Powell was busy at the time. Dkt. 17, Ex. 19 at 16. Esenwein had a preexisting relationship with Maskell and had exchanged emails with Arthurs in the past. *Id.* at 15–16. Esenwein signed a signature page but did not request to see the entire contract because he was in a hurry. *Id.* at 14. The effective date listed on the contract was December 1, 2017. *See* Dkt. 17, Ex. 15. During a later phone call, Esenwein authorized Arthurs to copy his signature from the first contract to two other rental contracts. Dkt. 17, Ex. 19 at 14. Those two additional contracts were dated February 1, 2018, and covered the rental of 12-inch and 16-inch DR11 HDPE pipe. *See* Dkt. 17, Exs. 16, 17. While the parties contest the validity of these three contracts (the "Sowards Contracts"), there is no dispute that they were not disclosed in the EIPA. *See* Dkts. 17, 19, 22.

Before TETRA acquired JRGO, Jacek Mucha ("Mucha"), TETRA's Vice President of Finance and Treasurer, had an auditor convert JRGO's financials into GAAP format "to get comfortable with the acquisition." Dkt. 17, Ex. 7 at 35–36. The auditor was unable to include the Sowards Contracts in the financial analysis, and as a result, the purchase price did not reflect the

3

liabilities they potentially imposed.  Dkt. 17, Ex. K ¶ 8.  When TETRA took over operations, it initially adopted JRGO's protocols to track the Sowards hose and pipe.  *Id.* ¶ 7.  Powell stayed on with TETRA, remained responsible for TETRA's rental relationship with Sowards, and managed the spreadsheet tracking TETRA's use of the hose and pipe.  Dkt. 17, Ex. 4 ¶¶ 25–26.  At the time, TETRA's executives did not know which hose and pipe belonged to Sowards or whether it was in good working order.  Dkt. 19, Ex. K ¶ 11.  However, Powell states that the Sowards hose and pipe "continued to be in operable working condition."  Dkt. 17, Ex. 4 ¶ 30.

On July 31, 2019, Sowards sent a letter to TETRA requesting payment for an invoice dated August 2018.  Dkt. 19, Ex. B.  That same letter indicated that Sowards believed the rented hose was damaged, and TETRA would be responsible for the replacement cost of $400,000 if not repaired as outlined in the Sowards Contracts.  *Id.*  TETRA did not believe the Sowards Contracts were legitimate and did not respond at that time.  Dkt. 17, Ex. 7 at 57.

On January 16, 2020, Sowards sent TETRA a letter demanding $962,894.45 for unpaid rent and the value of the hose and pipe, along with a settlement offer of $850,000.  *Id.* at 79–80.  Four days later, Sowards' counsel provided TETRA with copies of the Sowards Contracts.  *Id.* at 81.  TETRA reached out to Giese on February 4, 2020, via text message to gather information about the Sowards Contracts.  Dkt. 19, Ex. C.  Later that day, TETRA's counsel emailed Giese (the "Feb. 4 Email").  Dkt. 17, Ex. 7 at 104–05.  The Feb. 4 Email contained copies of the Sowards Contracts that Giese had requested and asked Giese not to contact Sowards or Wynkoop.  *Id.*  Giese replied that he was "not aware of the alleged contracts," doubted their authenticity, and offered to "help TETRA with this matter to the best of [his] ability."  *Id.*

4

On March 11, 2020, Sowards sued TETRA (the "Sowards Lawsuit") in West Virginia state court, initially seeking $962,894.45. *See* Dkt. 17, Exs. 7, 11. On April 9, 2020, TETRA removed that lawsuit to the United States District Court for the Northern District of West Virginia. Dkt. 17, Ex 12 (notice of removal for *Sowards Oil Field Services, Inc. v. TETRA Technologies, Inc. f/k/a/ JRGO Energy Services, LLC*, No. 2:20-cv-11 (N.D.W. Va. Apr. 9, 2020)). On June 5, 2020—the day before the last escrow payment was scheduled—TETRA sent Giese a notice of indemnification and instructed the escrow agent not to disperse the remaining balance. Dkt. 17, Ex. 7 at 103. As of August 24, 2021, Sowards' damages calculation in the Sowards Lawsuit has increased to $1,624,721.97. *See* Dkt. 17, Ex. 23 at 6.

## C. Procedural Background

On July 27, 2020, Giese commenced the instant lawsuit claiming TETRA breached the escrow agreement and seeking a declaratory judgment that he is not obligated to indemnify TETRA. Dkt. 1. In TETRA's answer, it admitted that the Feb. 4 Email "does not constitute notice of demand for indemnification under the terms of the Purchase Agreement." Dkt. 7 ¶ 21. TETRA also filed a third-party complaint against the Sellers alleging breach of the EIPA, specifically sections 3.6, 3.7, 3.11, and 3.19. *See* Dkt. 8.

Giese filed the instant motion for summary judgment on August 24, 2021. *See* Dkt. 17. In TETRA's response, it wishes to argue that the Feb. 4 Email constitutes written notice of an indemnification claim for section 8.4(a) of the EIPA. *See* Dkt. 19. To that end, TETRA filed the instant motion to amend its answer. Dkt. 24. The only change in the proposed amendment is to clarify that the Feb. 4 Email "does not constitute notice of demand for indemnification but [TETRA] denies any implication that this correspondence does not qualify as written notice of an

Indemnification Claim under Section 8.4(a) of the Purchase Agreement."  Dkt. 24, Ex. 1.  Both motions are now before the court.

## II. LEGAL STANDARDS

### A.  Amending the Pleadings

"[A] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters., L.L.C. v. SouthTrust Bank of Ala. N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)).  The Fifth Circuit considers four factors when determining whether the moving party has established good cause to amend the pleadings: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *Id.* at 536.  An amendment to the pleadings after a court's scheduling order deadline has expired must satisfy Rule 16(b), and only then "will the more liberal standard of Rule 15(a) apply."  *Id.*

Rule 15(a) permits parties to "amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  "[T]his mandates is to be heeded."  *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 85 S. Ct. 227 (1962)).  "A district court must provide a substantial reason to deny a party's request for leave to amend."  *Id.*  "In determining whether to grant leave to amend, the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment." *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 362 (5th Cir. 2017).

## B. Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

## A. Amending the Answer

TETRA wishes to amend its answer to conform with the argument that the Feb. 4 Email constitutes notice for section 8.4(a) of the EIPA. *See* Dkt. 24. The court finds that the need for the amendment, its importance, and a lack of prejudice provides good cause under Rule 16(b). *See S & W Enters.*, 315 F.3d at 536. With good cause established, the court next evaluates the motion under Rule 15(a). *See id*. The more liberal standard of Rule 15(a) establishes that TETRA "ought to be afforded an opportunity to test [its argument] on the merits." *Foman*, 371 U.S. at 182.

However, the court may properly deny an amendment if it is futile. *Bynane*, 866 F.3d at 362. The court concludes that the Feb. 4 Email does not satisfy the requirements for notice of an indemnification claim under section 8.4(a) of the EIPA, rendering the amendment futile.

The EIPA requires TETRA to provide the Sellers written notice of an indemnification claim within 30 days to be timely. Dkt. 17, Ex. 1 § 8.4(a). "*Such notice by the indemnified Party shall describe the Indemnification Claim in reasonable detail*, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the indemnified Party." *Id*. (emphasis added). Curiously, TETRA omits the first clause and uses only the requirements after the second "shall" when reciting the elements for what qualifies as a written notice of an indemnification claim under section 8.4(a). *See* Dkt. 19 at 10. An accurate reading of section 8.4(a) establishes that there are three requirements for a valid written notice: (1) a description of the indemnification claim in reasonable detail; (2) copies of all material written evidence; (3) the estimated amount of the loss, if reasonably practicable. Dkt. 17, Ex. 1 § 8.4(a).

The Feb. 4 Email is succinct. *See* Dkt. 17, Ex. 7 at 104–05. First, it references an earlier conversation where copies of the Sowards Contracts were requested. *Id.* Next, it describes the attached documents as three rental agreements and a demand letter from Sowards. *Id.* Finally, it concludes with a request that Giese not reach out to Sowards or Wynkoop directly. *Id.* Critically, at no time does the Feb. 4 Email hint at an indemnification claim—let alone describe one in reasonable detail as required by section 8.4(a). *See id.* Thus, this email cannot satisfy the requirements of a written notice of an indemnification claim under section 8.4(a) of the EIPA.

The amendment is futile because its sole purpose is to argue that the Feb. 4 Email serves as written notice for section 8.4(a), and the Feb. 4 Email does not meet the contractual requirements for such notice.  Therefore, TETRA's motion to amend its answer (Dkt. 26) is DENIED.

**B.  Untimely Written Notice of Indemnification**

As plaintiff, Giese moves for summary judgment on his breach of contract and declaratory judgment claims, arguing that there is no genuine dispute of material fact over whether TETRA's untimely notice invalidated a claim for indemnification under the EIPA.  *See* Dkt. 17.  TETRA's only argument that it gave timely notice was that the Feb. 4 Email satisfied the requirements of section 8.4(a).  *See* Dkt. 19.  The court has already established that the Feb. 4 Email was not written notice of an indemnification claim.  *See supra* Section III.A.  Thus, Giese did not receive written notice of an indemnification claim until June 5, 2020—five months after Sowards sent the demand letter and three months after the suit was filed.  *See* Dkt. 17, Ex. 7.  Thus, TETRA's notice was untimely.  Nevertheless, the court concludes summary judgment is inappropriate because there is a genuine dispute of material fact regarding the extent to which the untimely notice prejudiced Giese.

The EIPA states that "failure to give []prompt written notice shall not, however, relieve the indemnifying Party of its indemnification obligations, except and only to the extent that the indemnifying Party forfeits rights or defenses by reason of such failure or otherwise materially prejudices indemnifying Party."  Dkt. 17, Ex. 1 § 8.4.  As the party moving for summary judgment, Giese bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See* *Celotex*, 477 U.S. at 323.  To that end, Giese offers evidence for five ways in which he has forfeited

rights or defenses or otherwise been materially prejudiced to the extent that he is relieved of his indemnification obligations.

First, Giese's stated at his deposition that he lost the ability to litigate the Sowards Lawsuit in state court because TETRA removed the case prior to giving notice. Dkt. 17, Ex. 3 at 80. Second, Giese stated he lost the ability to be represented by his choice of counsel in the Sowards Lawsuit. *Id.* at 82. Third, Giese presents evidence that he could have settled for a lower amount. *See* Dkt. 17. Specifically, in December 2019, Sowards indicated a payment of $400,000 would satisfy the value of the hose and pipes. Dkt. 17, Ex. 7 at 68. Then, on January 16, 2020, Sowards offered to settle for $850,000. *Id.* at 80. Sowards is now seeking damages of $1,624,721.97. Dkt. 17, Ex. 23. Fourth, Giese stated that he was unable to investigate while memories of the events were still fresh. Dkt. 17, Ex. 3 at 84–85. Finally, Giese stated that he lost access to vital email records on October 4, 2019, and January 8, 2020, as part of TETRA's acquisition that he could have used to defend the Sowards Lawsuit had he received timely notice. Dkt. 17, Ex. 5 ¶¶ 9–10. These five categories of evidence indicate that the untimely notice prejudiced Giese, and the court finds this sufficient to meet his initial burden.

The burden now shifts to TETRA to set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). TETRA presents evidence to refute each of the five categories of forfeited rights or defenses or material prejudice asserted by Giese. *See* Dkt. 19. For the first and second categories—addressing where and how Giese could have litigated—Giese's previous statements have made it clear that he had no intention of participating in the Sowards Lawsuit despite multiple opportunities to be involved. Dkt. 19, Exs. G, H. For the third category, involving settlement, Giese was advised of all settlement offers in the Feb. 4 Email. Dkt. 17, Ex. 7 at 104–

05.  Further, email exchanges between the parties demonstrate that Giese has refused to follow up

on his purported offer to help TETRA in the Sowards Lawsuit.  Dkt. 19, Exs. G, H.  For the fourth

and fifth categories—addressing Giese's ability to investigate—Powell's declaration states that he

had a long relationship with Giese.  Dkt. 17, Ex. 4 ¶¶ 3–4.  Moreover, Powell knew all the relevant

facts and people involved, and it is unclear that Giese was deprived of any material information

that Powell could not provide.  *See* Dkt. 17, Ex. 4 ¶¶ 6–39.  Nevertheless, Giese chose not to

investigate using the information at his disposal or participate in the Sowards Lawsuit in any

manner.  Dkt. 19, Exs. G, H.

   For summary judgment, the court's function is not to "weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).  Based on the evidence presented,

a reasonable jury could find that TETRA's untimely notice did not cause Giese to forfeit rights or

defenses or be materially prejudiced to the extent that he is completely relieved of his duty to

indemnify TETRA.  Thus, there is a genuine dispute of material fact.  *See Fordoche*, 463 F.3d

at 392.  Therefore, Giese's motion for summary judgment on his breach of contract and declaratory

judgment claims is DENIED.

## C.  Breach of the EIPA

   As third-party defendants, the Sellers move for summary judgment on all four of TETRA's

claims for breach of contract.  Dkt. 17.  The court finds that there is a genuine dispute of material

fact for the claims based on breach of sections 3.6, 3.7, and 3.11 of the EIPA.  However, the court

finds summary judgment is appropriate for the claim based on breach of section 3.19 of the EIPA.

11

### 1.  Breach of Section 3.6

In section 3.6 of the EIPA, the Sellers represent that the disclosed "Financial Statements have been prepared in accordance with GAAP" and that JRGO "has devised and maintained a system of internal control over financial reporting."  Dkt. 17, Ex. 1 § 3.6.  Section 3.6 also states that "the recorded accountability for assets is compared with existing assets at reasonable intervals and appropriate action is taken with respect to any differences."  Dkt. 17, Ex. 1 § 3.6(b)(iv).  TETRA claims that the Sellers breached section 3.6 of the EIPA because they "did not maintain accurate inventory and/or asset control systems . . . concerning the use, damage to, and conversion of, the lay flat hose and other equipment that was leased to JRGO."  Dkt. 8 ¶ 29.  The Sellers argue there is no genuine dispute of material fact that they met these requirements.  Dkt. 17 at 34.  The court disagrees.

As the party moving for summary judgment, the Sellers bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The Sellers point to Mucha's deposition to establish that TETRA's auditor converted JRGO's financials into GAAP format to acquire the "information we need[ed] to get comfortable with the acquisition."  Dkt. 17, Ex. 7 at 35–36.  Further, TETRA continued to use JRGO's procedures to track the lay flat hose and other leased equipment for "those few months following the acquisition."  *Id.* at 39.  These statements are evidence that the Sellers satisfied their obligations under section 3.6 of the EIPA, and the court finds the Sellers have satisfied their initial burden.

The burden now shifts to TETRA to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).  Mucha clarified that "TETRA initially adopted JRGO rental procedures" because it "was unfamiliar with the record keeping practices" for such equipment.

Dkt. 19, Ex. K ¶ 7.  Mucha explained that "JRGO never disclosed the use of Sowards lay-flat hose, the condition of the hose or any of the Sowards/JRGO contracts to TETRA during the pre-acquisition due diligence."  Dkt. 19, Ex. K ¶ 9.  Critically, JRGO did not distinguish various hose and pipe using "markings or identifiable features."  Dkt. 19, Ex. K ¶ 11.

Based on this evidence, a reasonable jury could find the Sellers breached section 3.6 of the EIPA because they did not maintain accurate inventory or asset control systems by failing to identify the relevant hose and pipe or disclose its origins.  Further, a reasonable jury could find the Sellers were unable to fulfill their obligation to compare the assets with the records at reasonable intervals without accurate markings or identifiable features.  Thus, there is a genuine dispute of material fact.  *See Fordoche*, 463 F.3d at 392.  Therefore, the Seller's motion for summary judgment is DENIED in relation to TETRA's claim for breach of section 3.6 of the EIPA.

### 2.  Breach of Sections 3.7 and 3.11

In section 3.7 of the EIPA, the Sellers warrant they have disclosed all of JRGO's liabilities.  Dkt. 17, Ex. 1 § 3.7.  In section 3.11, the Sellers warrant that they disclosed all leases of personal property with annual payments above $5,000.  *Id.* § 3.11.  TETRA's claims for breach of these two sections are based on the failure to disclose the Sowards Contracts and the liabilities they created.  *See* Dkt. 8 ¶¶ 28,30.  The Sellers argue they are entitled to summary judgment because the Sowards Contracts are invalid as a matter of law, reasoning that if the contracts are invalid, they could not have breached sections 3.7 and 3.11 for failing to disclose them.  Dkt. 17.  The court disagrees that the contracts are invalid as a matter of law.

i.  *Choice of Law*

The dispute around breach of sections 3.7 and 3.11 involves the application of basic

principles of agency and contract law—specifically the concepts of actual and apparent authority

and the elements of contract formation.  *See* Dkt. 17.  The parties cite Pennsylvania law without

agreeing that Pennsylvania law applies to the Sowards Contracts.  *See* Dkts. 17 at 29, 19 at 22.

Thus, as a threshold matter, the court addresses which state law applies to the Sowards Contracts.

The Sowards Contracts contain a choice-of-law provision that applies the laws of West

Virginia.  Dkt. 17, Exs. 15 ¶ 30, 16 ¶ 30, 17 ¶ 30.  However, that "choice-of-law provision has

force only if the parties validly formed a contract."  *Edminster, Hinshaw, Russ & Assocs., Inc. v.*

*Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020).  Thus, a choice-of-law provision does not apply

"[w]hen determining the preliminary question of contract formation."  *Realogy Holdings Corp. v.*

*Jongebloed*, 957 F.3d 523, 531 n.11 (5th Cir. 2020).  In diversity cases, the court applies "the law

of the forum state to determine which state's law applies."  *Mumblow v. Monroe Broad., Inc.*, 401

F.3d 616, 620 (5th Cir. 2005).  However, when "'the laws of the states do not conflict, then no

choice-of-law analysis is necessary,' and we simply apply the law of the forum state."  *Id.* (quoting

*Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)).

Three potential state laws may apply: Pennsylvania, Texas, and West Virginia.[1]  For the

purposes of this motion, the court concludes there is no conflict between the laws of these three

---

[1]      Texas follows the "most significant relationship test outlined in the Restatement (Second)
of Conflict of Laws."  *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 (Tex.App.—Beaumont
2019, no pet.).  For breach of contract cases, factors to consider when determining which states
have an interest are the place of contracting, the place of negotiation, the place of performance, the
location of the subject matter of the contract, and the domicile, residence, or place of business of
the parties.  Restatement (Second) of Conflict of Laws § 188 (1971).  Thus, Pennsylvania has an
interest as it was the alleged place of contracting and the location of the hose and piping that was

states.[2]  *See infra* notes 3–5.  Therefore, the court applies the law of Texas, the forum state.  *See Mumblow*, 401 F.3d at 620.

### ii.  Actual or Apparent Authority

Esenwein signed The Sowards Contracts on behalf of JRGO.  *See* Dkt. 17, Exs. 15, 16, 17. The Sellers argue that Esenwein did not have actual or apparent authority to contract on behalf of JRGO, rendering the Sowards Contracts invalid as a matter of law.  Dkt. 17.  The court disagrees.

"An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."  *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).  "[O]ne seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise."  *Biggs v. U. S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981).[3]

---

the subject matter of the contract.  *See* Dkt. 17, Ex. 19 at 13–16.  Texas has an interest because TETRA became a party to the Sowards Contracts upon acquiring JRGO, and its principal place of business is in Texas.  *See* Dkt. 7 ¶ 2.  West Virginia has an interest because it is Sowards' place of business, and negotiations took place in West Virginia.  *See* Dkt. 17, Ex. 4 ¶ 13.

[2]      The dispute involves basic principles of agency and contract law.  Pennsylvania, Texas, and West Virginia have all adopted core principles of the Restatement (Third) of Agency.  *See e.g.*, *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 590 (Tex. 2017); *Off. Comm. of Unsecured Creditors of Allegheny Health Educ. & Rsch. Found. v. PriceWaterhouseCoopers, LLP*, 605 Pa. 269, 311, 989 A.2d 313, 338 (2010); *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 156, 706 S.E.2d 63, 77 (2010).  Similarly, all three states have adopted core principles of the Restatement (Second) of Contracts.  *See e.g.*, *City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011); *Conley v. Johnson*, 213 W. Va. 251, 255, 580 S.E.2d 865, 869 (2003); *Bethlehem Steel Corp. v. Litton Indus., Inc.*, 507 Pa. 88, 110, 488 A.2d 581, 593 (1985).

[3]      The treatment of actual and apparent authority of an agent is substantively the same under Pennsylvania and West Virginia law.  *Compare Biggs*, 611 S.W.2d at 629, *with Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 375, 246 A.2d 407, 410 (1968) ("Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted.  Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly

As the party moving for summary judgment, the Sellers bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.  Giese stated at his deposition that it was JRGO's standard operating procedure for him to sign all contracts, and Esenwein knew he did not have the authority to sign contracts.  Dkt. 17, Ex. 3 at 114–15.  Nick Griffiths ("Griffiths"), a former JRGO employee, stated at his deposition that he was not aware of any written policy regarding contracts, but it was common knowledge that Giese was "particular about being involved with contracts."  Dkt. 17, Ex. 6 at 25.  Finally, Powell declares that he did not authorize Esenwein to enter into a contract, and it was company policy that all written contracts were reviewed and approved by Giese.  Dkt. 17, Ex. 4 ¶ 36.  Thus, the Sellers have provided evidence to show Esenwein lacked either actual or apparent authority, and the court finds the Sellers have satisfied their initial burden.

The burden now shifts to TETRA to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).  As evidence of actual authority, TETRA offers a letter from Giese on JRGO letterhead that was in Sowards' possession addressed "To Whom It May Concern" certifying "that Christopher E. Esenwein is authorized to sign agreements, titles, and financial documents on behalf of JRGO Energy Services, LLC."  Dkt. 19, Ex. E.  As evidence of apparent authority, Esenwein testifies that he had prior dealings with Arthurs as part of his job, and Powell had sent Esenwein to meet Arthurs with the understanding that he was to sign some contracts. Dkt. 17, Ex. 19 at 14–17.  Powell had previously taken part in the negotiations between JRGO and

---

permits the agent to exercise such power or if the principal holds the agent out as possessing such power."), *and Gen. Elec. Credit Corp. v. Fields*, 148 W. Va. 176, 182, 133 S.E.2d 780, 783 (1963) ("an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority").

Sowards along with Giese.  Dkt. 17, Ex. 4 ¶ 14.  This is evidence that Powell had apparent authority because including him in negotiations is conduct by JRGO that could lead a reasonably prudent person to believe that Powell had the authority to bind JRGO.  *See Biggs*, 611 S.W.2d at 629.  This is also evidence that Esenwein had apparent authority because sending Esenwein as a known substitute for Powell to a meeting about the rental relationship is conduct by JRGO that could lead a reasonably prudent person to believe that Esenwein had the authority to bind JRGO in regard to that rental relationship.  *See id.*

The court cannot weigh the evidence presented by each side in a motion for summary judgment.  *Anderson*, 477 U.S. at 249.  A reasonable jury could conclude that Esenwein had actual or apparent authority to contract on behalf of JRGO.  Thus, there is a genuine dispute of material fact.  *See Fordoche*, 463 F.3d at 392.  Therefore, the Sowards Contracts are not invalid as a matter of agency law.

### iii.  Meeting of the Minds

Assuming Esenwein had actual or apparent authority, the Sellers argue the Sowards Contracts are nevertheless invalid because there was no meeting of the minds, and the written contracts contain "material terms like the casualty value of the pipe and hose [that] were never discussed or agreed to" at the negotiations.  Dkt. 17 at 32.  The court disagrees.

"A meeting of the minds is necessary to form a binding contract."  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).   "Meeting of the minds describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract."  *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  "Evidence of mutual assent in written contracts generally

consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).[4]

As the party moving for summary judgment, the Sellers bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Powell states that he and Giese negotiated the terms of JRGO's rental agreement with Sowards at a meeting on December 13, 2017. Dkt. 17, Ex. 4 ¶¶ 13–14. Except for certain prices, the terms of this rental agreement were the same as the agreement with Maskell. *Id.* ¶¶ 15–16. From this, the Sellers urge there was no mutual assent to additional terms found in the Sowards Contracts. *See* Dkt. 17, Exs. 15, 16, 17. The court finds the Sellers have satisfied their initial burden.

The burden now shifts to TETRA to set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Esenwein physically signed one of the Sowards Contracts and orally authorized his signature to be copied onto the other two. Dkt. 17, Ex. 19 at 14. Esenwein's signature on the Sowards Contracts is evidence of JRGO's mutual assent to the terms therein. *See Sonnichsen*, 221 S.W.3d at 635. Singing the contracts without seeing the terms does not change the analysis. *See In re Lyon Fin. Servs.*, 257 S.W.3d 228, 233 (Tex. 2008) ("parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation").[5]

---

[4]      The law on the meeting of the minds is substantially the same in Pennsylvania and West Virginia. *Compare Sonnichsen*, 221 S.W.3d at 635, *with New v. GameStop, Inc.*, 232 W. Va. 564, 573, 753 S.E.2d 62, 71 (2013) (finding an employee's signature on a form was evidence of a meeting of the minds on the issue of arbitration despite potentially conflicting employment documents indicating the employee never intended to agree to arbitrate disputes), *and Petrie v. Haddock*, 384 Pa. 7, 10, 119 A.2d 45, 47 (1956) ("A party's signature to a contract is designed to evidence his intention to be bound thereby.").

[5]      The law regarding unread, written contracts is substantially the same in Pennsylvania and West Virginia. *Compare In re Lyon Fin. Servs.*, 257 S.W.3d at 233, *with Sedlock v. Moyle*, 222

From Esenwein's signature, a reasonable jury could conclude there was a meeting of the minds. Thus, there is a genuine dispute of material fact. *See Fordoche*, 463 F.3d at 392. Therefore, the Sellers' motion for summary judgment is DENIED in relation to TETRA's claim for breach of sections 3.7 and 3.11 of the EIPA.

### 3. Breach of Section 3.19

In section 3.19 of the EIPA, the Sellers represent that they had "good and valid title to, or a valid leasehold interest in" JRGO's property, equipment, and other assets, and that they "are structurally sound, in reasonable operating condition and repair, normal wear and tear excepted." Dkt. 17, Ex. 1 § 3.19. TETRA claims the Sellers breached this section because "the condition of [the hose and pipe] was not in reasonable operating condition and repair." Dkt. 8 ¶ 31. The Sellers argue there is no evidence that any damage to the hose and pipe occurred before TETRA took control. Dkt. 17 at 33. The court agrees.

As the party moving for summary judgment, the Sellers bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The spreadsheet used to track the Sowards hose and pipe was first managed by Powell after TETRA acquired JRGO. Dkt. 17, Ex. 4 ¶ 26. Powell declared that "[w]hen TETRA acquired JRGO Energy, the hose and pipe being rented from Sowards continued to be in operable working condition." *Id.* ¶ 30. Eventually, that spreadsheet was managed by Griffiths. Dkt. 17, Ex. 6 at

W. Va. 547, 551, 668 S.E.2d 176, 180 (2008) ("[I]n the absence of extraordinary circumstances, the failure to read a contract before signing it does not excuse a person from being bound by its terms."), *and Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) ("In the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.") (cleaned up).

50–51.  Griffiths stated that, to the best of his knowledge, TETRA accounted for all the pipe when it took over in April of 2019.  *Id.* at 53.  Thus, the Sellers provide evidence that the hose and pipe were not damaged when TETRA acquired JRGO, and the court finds the Sellers have satisfied their initial burden.

The burden now shifts to TETRA to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).  However, TETRA points to no evidence to establish a genuine issue for trial.  *See* Dkt. 19 at 24–25.  TETRA correctly categorizes the question of whether the hose and pipe were damaged when TETRA acquired JRGO as a question of fact.  *See id.* at 25.  However, that is not sufficient to survive a motion for summary judgment because Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *See Celotex*, 477 U.S. at 324 (internal quotations omitted).

TETRA's only attempt at providing the evidence required by Rule 56(e) is to refer the court to Mucha's declaration where he states, "TETRA initially adopted the JRGO rental procedures" because "TETRA was unfamiliar with the record keeping practices of the rental hose and pipe equipment."  Dkt. 19, Ex. K ¶ 7.  Mucha also clarifies that there were not "markings or identifiable features" to "distinguish JRGO hose and pipe from Sowards hose and pipe."  *Id.* ¶ 11.  However, neither the adoption of JRGO procedure nor the lack of physical markings is relevant to the issue of whether the hose and pipe were damaged when TETRA acquired JRGO.

Critically, Mucha admits that "there was no way to determine whether the Sowards hose and pipe was in good working order" when TETRA acquired JRGO.  Dkt. 19, Ex. K ¶ 11.  Thus, Mucha's declaration makes clear that TETRA has no evidence to satisfy its burden, and a

reasonable jury could not conclude that the hose and pipe were damaged when TETRA acquired JRGO.  *See* Dkt. 19, Ex. K.  Therefore, the Sellers' motion for summary judgment is GRANTED in relation to TETRA's claim for breach of section 3.19 of the EIPA.

## IV. CONCLUSION

For the reasons provided, the court finds TETRA's proposed amendment to its pleadings would be futile.  Additionally, the court finds there are genuine issues of material fact regarding Giese's breach of contract and declaratory judgment claims, and regarding TETRA's claims for breach of sections 3.6, 3.7, and 3.11 of the EIPA, but not for TETRA's claim for breach of section 3.19 of the EIPA.

Therefore, it is ordered that TETRA's motion for leave to file a first amended answer (Dkt. 24) is DENIED.  Further, it is ordered that the Sellers' motion for summary judgment (Dkt. 17) is GRANTED IN PART AND DENIED IN PART.  The Seller's motion for summary judgment is DENIED in relation to Giese's breach of contract and declaratory judgment claims, and in relation to TETRA's breach of contract claims for sections 3.6, 3.7, and 3.11 of the EIPA; however, the motion is GRANTED in relation to TETRA's breach of contract claim for section 3.19 of the EIPA.

Signed at Houston, Texas on November 22, 2021.

_____
Gray H. Miller
Senior United States District Judge

21